UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NELSON E. WHITE, | Case No.: 2:05-cv-01150-RLH-LRL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Dismiss–#24) |
| SHEENA M. CONLON, TAXICAB AUTHORITY OF THE STATE OF NEVADA, KEN MANGUM (Acting Administrator of the Taxicab Authority), and ACE CAB, INC., and DOES I through 50, inclusive, | |
| Defendants. | |

Before the Court is Defendant State of Nevada ex rel its Department of Business & Industry, Taxicab Authority's ("TA") **Motion to Dismiss First Amended Complaint**[1] (#24), filed February 10, 2006. The Court has also considered Plaintiff's Opposition (#25), filed February 27, 2006, and Defendant's Reply (#28), filed March 13, 2006.

/ / / /

/ / / /

---

[1] After Defendant TA filed the instant motion, Plaintiff filed a second amended complaint. TA explains that the instant motion is equally applicable to Plaintiff's second amended complaint. Thus, the Court's decision is binding on Plaintiff's second amended complaint.

1

AO 72
(Rev. 8/82)

# BACKGROUND

Plaintiff, Nelson E. White was a taxicab driver in Las Vegas, licensed by the Taxicab Authority and employed by Ace Cab, Inc. ("Ace"). Plaintiff was romantically involved with Sheena M. Conlon ("Conlon"), but terminated the relationship in 2004. After their relationship ended, Plaintiff alleges that Ms. Conlon began a phone and letter-writing campaign from North Carolina to various persons and entities in Las Vegas, Nevada. In particular, Plaintiff alleges that Ms. Conlon contacted the Taxicab Authority several times by telephone asserting that Plaintiff was harassing her and had been convicted of a crime. Plaintiff further alleges that the Taxicab Authority refused to discuss the allegations made by Ms. Conlon or allow him to review the file which documented the allegations. The Taxicab Authority allegedly informed Plaintiff that if he was not careful his license would be revoked.

On or about November 1, 2004, Plaintiff alleges that Ms. Conlon contacted Ace by sending a letter that stated Plaintiff was stalking her and that criminal action had been instituted against him. Plaintiff alleges that Ms. Conlon's actions resulted in great embarrassment and caused him to be ridiculed by Ace and his fellow employees at Ace, to whom Ace management circulated the letter. The continuing harassment and ridicule allegedly resulted in Plaintiff's termination from Ace. Plaintiff alleges that Ace and the Taxicab Authority have and will in the future republish to unknown third parties the unfounded allegations communicated to them by Ms. Conlon.

Because of the alleged actions taken against him, Plaintiff filed suit on September 19, 2005 against Ms. Conlon, Taxicab Authority of the State of Nevada, Ken Magnum (Acting Administrator of the Taxicab Authority) ("Mangum"), Ace, and Does 1 through 50, alleging violations of 42 U.S.C. §§ 1983, 1985(3), 1986, and state law claims of negligence, defamation, interference with prospective economic advantage, intentional infliction of emotional distress, aiding and abetting, and civil conspiracy.

////

Now, Defendant TA moves to dismiss Plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by arguing that the Eleventh Amendment bars Plaintiff's complaint against it and Mangum, in his official capacity.

**DISCUSSION**

**I. Motion to Dismiss Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

**A. Eleventh Amendment Immunity**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In other words, a federal court will not entertain a suit against a state brought by citizens of another state, by citizens or subjects of any foreign state, or by citizens of its own state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Such a suit, however, can be maintained if a state waives its immunity by consenting to suit, *Oregon Short Line R.R. Co. v. Dep't of Revenue Or.*, 139 F.3d 1259, 1264 (9th Cir. 1998), or if Congress validly abrogates the state's immunity, *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996).

AO 72
(Rev. 8/82)

Neither exception applies here, as the State of Nevada has explicitly declined to waive its immunity from suit under the Eleventh Amendment, Nev.Rev.Stat. § 41.031(3), and Congress has not abrogated immunity with respect to Section 1983 cases or pendant state law claims. *See Black v. Goodman*, 736 F. Supp. 1042, 1045-46 (D. Mont. 1990); *see also Quern v. Jordan*, 440 U.S. 332 (1979).

The Supreme Court has clarified that "the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996). Whether for monetary damages or for injunctive relief, any suit against a state in federal court is barred under the Eleventh Amendment. *See Cory v. White*, 457 U.S. 85, 90-91 (1982). The Eleventh Amendment also applies to an official sued in his or her official capacity. Such a suit is not against the official but rather the official's office. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Eaglesmith v. Ward*, 73 F.3d 857, 860 (9th Cir.1995). Consequently, an action for damages may not be brought against a state official in his or her official capacity. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). However, an exception to this rule of immunity applies to official capacity actions against state officials for injunctive relief when challenging the constitutionality of a state official's action. *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Ex parte Young*, 209 U.S. 123, 159-60 (1908).

As noted above, the Eleventh Amendment prohibits any suit "against one of the United States." U.S. Const. amend. XI. This reference pertains to suits in which a State is actually named as the defendant, and also includes suits against state agents and state instrumentalities. *Regents of the Univ. Of Calif. v. Doe*, 519 U.S. 425, 429 (1997). To determine whether an agency or instrumentality is an "arm of the state" entitled to immunity, the court must examine the following five factors: (1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only the name of the

AO 72
(Rev. 8/82)

state, and (5) the corporate status of the entity. *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). In addressing these factors, "the court looks to the way state law treats the entity." *Id*.

The first, and most important factor, is whether a money judgment will be satisfied out of state funds. *Eason v. Clark County Sch. Dist.*, 303 F.3d 1137, 1141 (9th Cir. 2002). Additional weight is given to this factor "[b]ecause the impetus of the Eleventh Amendment is the prevention of federal-court judgments that must be paid out of a state's treasury ...." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1041 (9th Cir. 2003).

Here, TA contends it is an agency of the State of Nevada contained within its Department of Business & Industry. In that capacity, TA explains that it does not generate income, but rather collects fees that are deposited into the TA fund. Because the fees are used to defray the costs of regulating taxicabs, TA argues that any judgment entered against it would have to be satisfied out of State funds. Plaintiff, however, asserts that Mr. Mangum stated that in 1971 TA became a completely self-funded agency receiving no financial support from the Nevada general fund, or highway fund. This means, Plaintiff argues, that TA operates at no cost to the Nevada taxpayers. Moreover, Plaintiff claims that Nev. Rev. Stat. § 706.8825 recognizes the right of TA to generate income, and mandates that all such monies and interest be maintained in TA's Fund and not revert to the State's general fund. Since TA is self-sufficient and has the authority to raise independent revenue, Plaintiff contends that a judgment against TA would be satisfied by TA, and not the State.

At the outset, the Court notes that there are no statutory provisions deeming Nevada responsible for the debts of TA. Nor are there any Nevada cases directly addressing this issue. Nonetheless, an examination of the statutes governing TA's authority provide some guidance. The Nevada State Legislature ("legislature") created the Department of Business and Industry ("DBI") as a State Department included under the State Executive Branch. DBI consists of thirteen agencies, including TA. Nev. Rev. Stat. § 232.510(2)(i). TA regulates the taxicab industry in

1. counties with populations exceeding 400,000. Nev. Rev. Stat. § 706.881(1)(a). Among other things, TA determines the number of taxicabs authorized for each certified company, manages the driver permitting program, and ensures taxicab safety and operating standards.

By statute, the fees collected by TA includes a $100 fee per year per taxicab and up to a $0.20 cent trip charge, $200 filing fee for a certificate of public convenience, $40 fee for an original driver's permit and a $10 fee for a renewal, and various administrative violations fines. *See* Nev. Rev. Stat. §§ 706.8826, 706.8827, 706.8841, 706.8848, 706.8849, & 706.885. These fees are deposited into the TA fund, and is categorized under the State's special revenue fund. Nev. Rev. Stat. § 706.8825(1). The funds are held in the state treasury. *See* Nev. Rev. Stat. § 706.8826(3). Pursuant to Nev. Rev. Stat. § 706.8825(3) & (4), the fees collected by TA are appropriated to defray the cost of regulating taxicabs.

In light of the above, the Court finds that a judgment entered against TA will be satisfied by the State of Nevada. The Court relies on TA's status as an agency of the State Department of Industry & Regulation, TA's responsibility of regulating the taxicab industry, and TA's finances, as evidence that a judgment entered against it, is actually a judgment against the State. Particularly, the Court notes that the funds collected by TA are pursuant to statutory provisions, and the funds are held in the state treasury. Moreover, the state statute appropriates the fees received to be used to defray the cost of regulating taxicabs. The Court also finds that TA's authority is limited to adopting appropriate regulations for the administration and enforcement of Nev. Rev. Stat. §§ 706.881 to 706.885, and that TA lacks authority to raise revenue or use the funds received to its discretion.

The second factor to consider is whether TA performs central governmental functions. In assessing this factor, the Court evaluates whether TA addresses "a matter of statewide rather than local or municipal concern," *see Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 253 (9th Cir. 1992), and "the extent to which the state exercises centralized governmental control over" it. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1044 (9th

Cir. 2003). TA's regulatory authority encompasses those counties whose population is 400,000 or more. Nev. Rev. Stat. § 706.881(1)(a). Presently, that includes Clark County. TA's authority may be extended to additional counties as provided under Nev. Rev. Stat. § 706.881.

In carrying out its duties, TA has some discretion, but is primarily controlled by the state government. For instance, the State mandates that the administrator of TA shall conduct administrative hearings and make final decisions, subject to an appeal to TA, in certain matters. Nev. Rev. Stat. § 706.8822. Whenever a hearing is conducted, the administrator may issue subpoenas requiring the attendance of witnesses. Nev. Rev. Stat. § 706.88235. TA may also determine the circumstances that require a temporary increase in the number of taxicabs allocated, and may make such allocations. Nev. Rev. Stat. § 706.88237 (1)-(2). In doing so, TA shall consider the factors outlined in the statute. Nev. Rev. Stat. §§ 706.8824 & 706.8825. When circumstances require an increase in the existing allocations, TA shall allocate the additional taxicabs equally among certificate holders. Nev. Rev. Stat. § 706.8824(3).

The following are examples of the State's control over TA's finances. All fees collected pursuant to NRS 706.881 to 706.885, inclusive, must be deposited by the Administrator to the credit of the TA fund. Nev. Rev. Stat. § 706.8825(1). The fees received, pursuant to specified statutes, are appropriated to defray the cost of regulating taxicabs in the county in which the business is operated. Nev. Rev. Stat. § 706.8825(4). And lastly, "[a]ny certificate holder who is subject to an order of allocation by TA shall pay to TA $100 per year for each taxicab that TA has allocated to the certificate holder and a fee set by TA that must not exceed 20 cents per trip for each compensable trip of each of those taxicabs ...." Nev. Rev. Stat. § 706.8826(3). "The money so received by TA must be deposited in the State Treasury to the credit of the TA fund." *Id*.

Because TA regulates the taxicab industry in Clark County, it appears that TA is concerned with local, rather than state wide concerns. However, the Court notes that the State legislature has granted the Transportation Services Authority (TSA) with statewide regulatory responsibility for, among other things, taxicabs operating in all counties, except Clark County. *See*

*generally* Nev. Rev. Stat. § 706.151. Because the State legislature has vested both TA and TSA with the responsibility of regulating taxicabs in the counties of Nevada, it follows that both agencies are addressing an important statewide concern, that is administering, regulating, and enforcing Nevada's laws with respect to the taxicab industry. For the reasons stated, the Court finds the second prong weighs in favor of finding TA is an arm of the State.

The next factor considers whether TA may sue or be sued in its name. In Nevada, there are no statutes granting or denying TA the power to sue or be sued in its own name. Nonetheless, the Court looks to Nevada suits involving TA. In those actions, it appears that TA is named as an agent of its principal, the State of Nevada. *See, e.g., A-NLV-Cab Co. v. State of Nevada, Taxicab Authority, an agency of the State of Nevada*, 825 P.2d 585 (Nev. 1992); *Checker Cab Co. v. State of Nevada and the Taxicab Authority of the State of Nevada*, 621 P.2d 496, Nev. 1981); *State of Nevada, Taxicab Authority v. Greenspun*, 862 P.2d 423 (Nev. 1993); *State of Nevada ex rel. Robert List, on relation of its State Taxicab Authority of Clark County v. Mirin*, 553 P.2d 966 (Nev. 1976). In all of actions cited above, the Nevada Attorney General's Office represents the State of Nevada, Taxicab Authority. Consequently, the Court finds that TA may not sue or be sued in its own name. Thus, this factor favors a finding that TA is an arm of the State.

The two remaining factors require the Court to consider whether TA holds property in its name, and TA's corporate status, if any. Neither TA nor Plaintiff adequately address these factors. Nonetheless, the Court finds that there are no statutory provisions or case law addressing TA's status in either instance. Therefore, the Court finds that the absence of such information further indicates this factor weighs in favor of finding TA is an arm of the State.

For the reasons stated, the Court concludes that TA is an arm of the state entitled to Eleventh Amendment immunity. Similarly, Kenneth Mangum, in his official capacity, is also entitled to Eleventh Amendment immunity.

/ / / /

/ / / /

8

**1. 42 U.S.C. § 1983**

In his second amended complaint, Plaintiff alleges that Defendants TA and Mangum deprived him of his Fourteenth Amendment right to due process in violation of 42 U.S.C. § 1983. Defendants TA and Mangum, however, argue that Plaintiff's claim is barred because they are not "persons" under § 1983.

42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Therefore, neither may be sued under § 1983. There is an exception, however. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71, n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985). Thus, a federal court is not barred from granting prospective injunctive relief against an official of the state who acts outside the bounds of his authority. *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 973 (9th Cir. 1994).

Here, Plaintiff has brought suit against TA and Mangum, in his official and personal capacities. It is clear that TA as an arm of the state is not a "person," and therefore, is barred from suit under § 1983. Likewise, Mangum, in his official capacity, is not a "person," and is also immune from suit under § 1983 to the extent Plaintiff seeks non-injunctive relief. Plaintiff may, however, maintain his § 1983 action against Mangum, in his official capacity for prospective injunctive relief and in his personal capacity for monetary damages.

Although Defendants TA and Mangum, in his official capacity, fail to address Plaintiffs § 1985 claim, the Court also dismisses this cause of action because "the absence of a

9

section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989), *cert. denied*, 493 U.S. 817 (1989). Moreover, "courts have held that the term 'person,' as used in section 1985, has the same meaning as 'person,' as used in section 1983." *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1404 (N.D. Cal. 1997); *see, e.g., Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1370-71 (4th Cir. 1989); *Santiago v. New York State Dep't of Corr. Servs.*, 725 F. Supp. 780 (S.D.N.Y. 1989), *rev'd on other grounds*, 945 F.2d 25 (2d Cir. 1991); *Culler v. South Carolina Dep't of Soc. Servs.*, 33 F.E.P. 1590 (D.S.C. 1984). Since a claim under section 1986 exists "only if the complaint contains a valid claim under § 1985," it follows that Plaintiff's § 1986 claim must also be dismissed. *See McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990). Accordingly, Defendant TA and Mangum, in his official capacity, is entitled to immunity under the Eleventh Amendment and barred from suit under 42 U.S.C. §§ 1985 and 1986.

**2. State Law Claims**

Plaintiff asserts state law claims of negligence and defamation against Defendant TA and Mangum, in his personal and official capacity. Because Defendants TA and Mangum, in his official capacities, are entitled to immunity under the Eleventh Amendment, Plaintiff's state law claims against them are barred. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)(holding that the eleventh amendment bars federal courts from hearing pendent state claims brought against state officers who are sued in their official capacities). To the extent, however, that Plaintiff is suing Defendant Mangum in his personal capacity for monetary damages, immunity under the Eleventh Amendment does not apply. *See Pena v. Gardner*, 976 F.2d 469, 473-74 (9th Cir. 1992)(concluding that the Eleventh Amendment does not bar federal courts from hearing pendent state claims brought against state officials sued in their individual capacities).

In response to Plaintiff's state law claims, Defendants TA and Mangum contend that they are entitled to discretionary immunity pursuant to Nev. Rev. Stat. § 41.032.

AO 72
(Rev. 8/82)

Accordingly, Nev. Rev. Stat. § 41.032 provides that no action may be brought against a state actor that is:

> 2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

Thus, the Nevada Supreme Court has held that state officials may be sued for torts they commit while performing non-discretionary (or "ministerial") acts, but not for performing discretionary acts. *Foster v. Washoe County*, 964 P.2d 788 (Nev. 1998).

The Nevada Supreme Court has defined "a discretionary act as that 'which requires the exercise of personal deliberation, decision and judgment.' A ministerial act is an act performed by an individual in a prescribed legal manner in accordance with the law, without regard to, or the exercise of, the judgment of the individual." *Pittman v. Lower Court Counseling*, 871 P.2d 953, 956 (Nev. 1994) (overruled in part on other grounds by *Nunez v. City of N. Las Vegas*, 1 P.3d 959 (Nev. 2000)). "Although a given act involved the exercise of discretion and was thus immune from liability, negligence in the operational phase of a decision would subject the State, its agencies, and employees to liability." *Hagblom v. State Dir. of Motor Vehicles*, 571 P.2d 1172, 1175 (Nev. 1977).

In this case, Plaintiff alleges the following three wrongful acts were committed by Defendants TA and Mangum: (1) maintaining derogatory information about Plaintiff in its file; (2) refusing to allow Plaintiff to review his file so that he could defend himself; and (3) disclosing information in Plaintiff's file to third parties. Defendants TA and Mangum responds by asserting that they have the duty to investigate any complaints against a taxicab driver, and if necessary bring an administrative proceeding to discipline the driver through a fine or revocation of his taxicab permit. According to Defendants TA and Mangum, the conduct of such investigations is inherently discretionary. Furthermore, Defendants TA and Mangum assert that whether the driver is allowed access to an investigative file is a completely discretionary decision based on the

11

timing of the request and the stage of the investigation.

Taking the facts in the light most favorable to Plaintiff, it appears that all of the acts committed by Mangum were done in accordance with the law or policies of Defendant TA. At this stage, the Court finds that Mangum, in his personal capacity, is not entitled to discretionary immunity on Plaintiff's state law claims.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant TA's Motion to Dismiss First Amended Complaint (#24) is GRANTED as follows: Plaintiff's claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against TA and Mangum, in his official capacity to the extent that Plaintiff seeks non-injunctive relief, are dismissed; and Plaintiff's state law claims against TA and Mangum, in his official capacity, are also dismissed.

IT IS FURTHER ORDERED that this Order is binding on Plaintiff's subsequently filed Second Amended Complaint (#43).

Dated: June 6, 2006.

_____
**ROGER L. HUNT**
**United States District Judge**